[No. 15852. Department Two. August 10, 1920.]

FRANK W. BEEMAN, *Respondent*, v. TACOMA RAILWAY & POWER COMPANY, *Appellant*.[1]

STREET RAILROADS (30)—COLLISION WITH AUTOMOBILE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. The contributory negligence of the driver of an auto truck struck by a street car is a question for the jury, where there was evidence that he attempted to cross the tracks at a street intersection after giving the proper signal and noticing an approaching car on the other track some 125 feet distant from the intersection, that the truck skidded and in attempting to stop the skidding he killed his engine and was struck by the approaching car, and that he had ample time to cross had his truck not skidded and the engine killed, and that the street car was a "one man car" and that the motorman was busy making change with a passenger at or shortly before the collision occurred.

SAME (33)—COLLISION AT CROSSING—DUTY OF MOTORMAN AND DRIVER—INSTRUCTIONS. In such a case, it was proper to instruct the jury that the driver, in approaching the crossing, had a right to presume that the motorman was keeping his car under such reasonable control as was commensurate with the situation at such point.

DAMAGES (80)—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $2,000 for injuries sustained by the driver of a truck in collision with a street car is not excessive, where he sustained cuts over the ear and eye and the right temple region which tore away part of the temple muscle and required several stitches, and that he had not regained use of the muscles at that point at the time of the trial and still suffered pain and headaches.

Appeal from a judgment of the superior court for Pierce county, Fletcher, J., entered November 3, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained

[1]Reported in 191 Pac. 813.

by a truck driver through a collision with a street car. Affirmed.

*F. D. Oakley,* for appellant.

*Harry H. Johnston,* for respondent.

BRIDGES, J.—This is a personal injury suit. There was a verdict of the jury in the sum of $2,000. At the conclusion of the plaintiff's case, the defendant moved for a nonsuit, which was denied by the court. At the close of the taking of all the testimony, there was a motion for an instructed verdict for the defendant, which motion was denied. Defendant's motion for a new trial was also refused. Thereafter judgment was entered on the verdict in favor of the plaintiff and against the defendant in the sum of $2,000. From this judgment, the defendant has appealed to this court.

The testimony tended to show the following facts: The respondent was an experienced Ford truck driver and was in the employ of the Olympic Ice Cream Company, of Tacoma, Washington. On February 26, 1919, he was driving his truck south on Pacific avenue in Tacoma, and intended to turn to the left and cross that avenue at Twenty-second street and continue easterly on that street for the purpose of going to the factory where he was employed. For three or four blocks on Pacific avenue north of Twenty-second street he had been driving at the rate of about ten miles per hour, and for that distance, or most of it, one of appellant's street cars was following him, going at about the same rate of speed. Pacific avenue has two street car tracks upon it, located near the center of the street, the westerly track being for south-bound cars and the easterly track for the north-bound cars. The corner of Pacific avenue and Twenty-second street is a busy and important intersection of streets in the city of Tacoma.

As respondent approached this intersection, the south-bound car which had been following him was about one hundred feet back of him; he gave a signal by throwing out his left arm, showing that he intended to cross Pacific avenue at Twenty-second street; and at about the time of turning into that street, or a little before that time, he saw coming toward him a street car on the easterly track and going northerly along Pacific avenue. At that time the north-bound car, according to plaintiff's testimony, was about one hundred to one hundred and twenty-five feet south of the center of the intersection of the two streets; it was raining and the street was wet and slippery; when the rear wheels of his truck struck the west rail of the street car track, they skidded, so as to practically stop the forward motion of the truck, and in order to stop the skidding, he threw the clutch into neutral. As soon as the car ceased to skid, he immediately engaged the clutch, but only succeeded in moving the truck three or four feet, when the engine stopped running, thus leaving him stalled on the easterly street car track. At this time the north-bound car was some thirty or forty feet from him. The street car did not appear to decrease its speed as it approached respondent, but hit his truck with great force, derailing the street car and carrying the truck over the street to the curb, a distance of more than one hundred feet. He further testified that, when he started to cross Pacific avenue, he thought he had, and, as a matter of fact, did have, ample time to get across ahead of the street cars, and that he would easily have made the crossing had not his car started to skid and had he not "killed" his engine.

There was also testimony to the effect that, a block or two south of Twenty-second street, three passengers had come aboard the north-bound car, and, among the others, a Japanese, who gave to the conductor, who

was also the motorman, a two-dollar bill, and he was given small change therefor; that, as the car approached Twenty-second street, the motorman was counting out the change and handing it to the passenger, and was looking in the direction of the passenger, and that the collision with the truck occurred at once after the change was handed to the passenger, and that the collision caused the passenger to drop the change on the floor of the car. The car in question was what is known as a "one-man" car, the motorman acting also as conductor.

It is vigorously argued by the appellant that, under the decisions of this court, the respondent was, as a matter of law, guilty of contributory negligence, and that appellant's motion for nonsuit and for a directed verdict should have been granted. Appellant cites many cases from this and other courts, but the facts in this case are so at variance with the facts in all of the cases cited that we find them all inapplicable and that they give us very little assistance. Appellant particularly seems to rely on *Helliesen v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458; *Fluhart v. Seattle Elec. Co.*, 65 Wash. 291, 118 Pac. 51; and *Beeman v. Puget Sound T. L. & P. Co.*, 79 Wash. 137, 139 Pac. 1087.

In the *Beeman* case, the plaintiff, who was a pedestrian, was crossing one of the streets in the city of Seattle. As he stepped on the sidewalk, he looked up the street and saw a street car coming toward him, and was, he thought, about four hundred and fifty feet away. It was dark and the street car was carrying a headlight. The plaintiff was picking his way across the muddy street, when he was struck by the car and injured. Under the facts of that case, the court held that the plaintiff was guilty of contributory negligence and could not recover.

In the *Helliesen* case, *supra,* the facts were that the plaintiff was intending to cross Bellevue avenue, and as she came to that street she saw two cars, one headed east and the other west. Thinking she had time to cross the street before the cars should reach the intersection, she started across and was struck by one of them. The court held that, under the physical facts shown to exist, it was plain that plaintiff did not look for the approach of cars before she attempted to cross; that, had she looked, she must have seen the car near her, and that it was dangerous for her to attempt to cross.

In the *Fluhart* case, the facts were that a pedestrian was held to be guilty of contributory negligence where he stepped in front of a well-lighted approaching car, and which he could have seen a block away.

We cannot here review all the cases cited by appellant. Suffice it to say that each case rested upon facts very different from those shown by the plaintiff to exist here. The law of each personal injury case must, to a very large extent, depend upon the facts of that case. In this case, if the plaintiff's testimony is to be believed, he had ample time to make the crossing in front of the street car which hit him, and the reason he did not succeed was that his truck unexpectedly skidded, and that, as the indirect result thereof, he "killed" his engine, and his truck was left helpless on the street car track. He testified that, when he started to make the crossing, the car which hit him was from one hundred to one hundred and twenty-five feet from the place where he would cross, and that, after he had been delayed by the skidding of his car, the consequent necessity to check its forward movement to stop the skidding, the shifting of gears and the final "killing" of his engine, the street car was still some thirty or forty feet from him. Under facts such as these, we

cannot say, as a matter of law, that he was guilty of negligence. The question of his negligence was for the jury. It is true appellant produced much testimony tending to show that respondent was reckless in attempting to cross; that the car following him was at all times immediately at his heels, and the car which struck him was so close to him when he turned for the crossing that an accident was almost inevitable. But the jury had a right to believe that the facts existed as shown by respondent. The testimony was contradictory and the jury had a right to pass on it.

Appellant takes exception to the following instructions given by the court to the jury:

"The driver of a vehicle approaching a street car crossing is entitled to presume that an approaching street car will be moved at that point under control of the motorman who is keeping a reasonable lookout ahead, and is keeping his car under such reasonable control as is commensurate with the situation at such point, having due regard to the general traffic and the probable danger of collision, and the conduct of the driver of a vehicle in attempting to cross in face of an approaching street car is to be measured with regard to his right to rely on the street car being under such control, and the opportunity of the motorman to observe in making such crossing.

"It is not necessarily negligence for a driver of an automobile truck to attempt to cross over a street car track at a crossing in face of an approaching car, if under all the circumstances a reasonably careful driver would be justified in believing that he could pass over in safety, relying on the duty that both he and those in charge of the street car must act with reasonable regard to the rights of others."

It is contended that these instructions are wrong because "they informed the jury that the respondent had a right to presume that the motorman was keeping his car under such reasonable control as was com-

mensurate with the situation at this point," whereas the respondent, having seen the car approaching, could not rely on any such presumptions. But we think the instructions, while general in their nature, not only state the law as it should be, but as it has often been announced by this court.

In the case of *Richmond v. Tacoma R. & Power Co.*, 67 Wash. 444, 122 Pac. 351, this court said: "a pedestrian is justified in ordering his movements upon the assumption that street cars will be operated, not only in conformity with local laws, but with a high degree of care and with due regard to public travel on the street." *Chisholm v. Seattle Elec. Co.*, 27 Wash. 237, 67 Pac. 601; *Mallet v. Seattle, Renton & S. R. Co.*, 66 Wash. 251, 119 Pac. 743. Appellant cites *Beeman v. Puget Sound T. L. & P. Co., supra,* in support of its argument against these instructions. But that case goes no farther on this point than to hold that one traveling a street may not implicitly and blindly rely upon the presumption that the street car will be operated with due care; that he cannot rely upon such presumption to the point that he need not exercise care for himself; that one may not see a car coming toward him at an excessive rate of speed and still rely on the presumption that it will not violate the speed ordinances. In short, that case, in substance, holds that one may not rely on presumptions which he knows are being violated. We cannot find any substantial error in the instructions complained of.

Complaint is also made that the court did not give certain requested instructions. We think the instructions given by this court amply covered those requested. In fact, the instructions are very full and they fairly presented to the jury all the issues involved.

Appellant further contends that the verdict, which was for $2,000, was excessive and that it should have

been given a new trial on that account. The testimony shows that respondent's injuries consisted of a slight cut over the right ear, and another cut about an inch long over the center of the right eye, and a large semi-circular cut in the right temple region. His physician testified that the first two mentioned cuts were of a comparatively unimportant nature, but that the other was a rather deep cut. It opened up some of the deeper vessels and tore away part of the temple muscle. This torn muscle was sewed up and several stitches taken in the various cuts. At the time of the trial, which was some seven months after the injury, that portion where the temple muscle was cut was numb and respondent had not regained the use of those muscles, and thus his face was greatly affected; he still suffered some pain and headaches. The jury and trial court actually saw the condition of respondent's face and were much more capable of measuring the extent of the injury than we. The trial court must have been satisfied that the verdict was not excessive. While we feel that it was liberal, we cannot say that it was excessive. The judgment is affirmed.

HOLCOMB, C. J., FULLERTON, MOUNT, and TOLMAN, JJ., concur.