[No. 12577.   Department One.   September 1, 1915.]

DAVID E. BLAIR, *Respondent*, v. SCOTT CALHOUN *et al.*,
*Receivers etc., Appellants.*[1]

STREET RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE
—QUESTION FOR JURY.  A teamster is not guilty of contributory neg-
ligence, as a matter of law, in attempting to cross a street car track
at a city crossing, where, when about forty feet from the track, he
looked and saw an approaching street car two blocks away moving
slowly, and as his horses were about to step on the track, he looked
a second time, and saw the car about two hundred feet away ap-
proaching at about ten miles an hour, and looking a third time he
made every effort to increase his speed and cross ahead of the car,
which had increased its speed to 18 or 30 miles an hour, and in
excess of the speed limit, without effort to slacken its speed until
almost upon him, when it struck the felloe of the hind wheel, need-
ing only 1½ inches to clear the wagon altogether.

SAME—CROSSING ACCIDENT—NEGLIGENCE—LAST CLEAR CHANCE.  In
such a case, where the motorman had an unobstructed view of the
vehicle for a distance of 300 feet, the doctrine of last clear chance
applies, and an instruction thereon is proper.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS.  An instruc-
tion to the effect that the speed of street cars "in the thickly settled
portions of the city" is limited to twelve miles an hour, is not
erroneous as a comment on the facts, in that it assumes that the
accident occurred in the thickly settled portions of the city, where
counsel had admitted that the twelve mile limit applied.

SAME.  An instruction to the effect that it was negligence of
itself to run a street car in excess of the city speed limit, is not
reversible error in that it fails to limit the liability to negligence
that was the proximate cause of the injury, where such limitation
was given by other instructions.

SAME.  It is not error to refuse a request for instructions that
were covered in the general charge.

SAME.  It is not prejudicial error to refuse to give instructions
that punitive or exemplary damages could not be given, nor any-
thing by reason of sympathy, where the court gave fair and correct
instructions as to what should be allowed as compensatory damages.

STREET RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE
—EVIDENCE.  Where the testimony of plaintiff, struck by a street car,

[1]Reported in 151 Pac. 259.

showed that he had time to clear the track before the car reached him, if its speed had not been increased, it is not error to exclude, on cross-examination in reference to his contributory negligence, a question as to whether he knew anything about the distance within which the car could have been stopped; as that was not an element for consideration.

DAMAGES—PERSONAL INJURIES—MEDICAL SERVICES—INSTRUCTIONS. In an action for personal injuries, an instruction allowing recovery for medical attendance is not prejudicial in that it was not limited to "reasonable" charges, where the only evidence of such charges was that $150 would be a reasonable charge.

SAME—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $5,000 for personal injuries sustained by a teamster, in good health, earning $68 per month, is not excessive, where the injury resulted in total disability for manual labor, and serious permanent injuries to one kidney, his spine and nervous system, causing high fevers and intense pain.

APPEAL—REVIEW—REFUSAL OF NEW TRIAL—DISCRETION. Misconduct of counsel in argument, to which no objection was made at the time or request made for an instruction, cannot be urged on appeal as ground for a new trial, where the trial court duly exercised its discretion in overruling the motion.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered May 23, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a teamster through collision with a street car. Affirmed.

*Scott Calhoun* and *John A. Homer*, for appellants.
*Griffin & Griffin*, for respondent.

HOLCOMB, J.—Respondent obtained a verdict and judgment in the superior court for personal injuries, based upon negligence. In substance, the case made by the respondent to the court and jury was this: On September 16, 1913, between five-thirty and six o'clock in the afternoon, respondent, driving an ordinary covered delivery wagon on Tenth avenue south, in Seattle, with a small load of groceries, and with a small boy of his employer sitting beside him, attempted to cross King street, upon which appellants maintain a

double-track street car line. To the east, the nearest cross-street was Twelfth avenue south, at which street appellants' cars always came to a full stop before crossing the Beacon Hill car line tracks. The distance from Twelfth avenue south to Tenth avenue south, as testified to by one of the receivers from data obtained from the city engineer's office, was 597½ feet between street centers, and the grade of the street on which appellants' car line ran between those cross-streets was six per cent, the slope being to the west from Twelfth to Tenth avenue south. There were two large buildings situated east of Tenth avenue on King street, shutting off the view of respondent to the east as he drove his team south, and he first saw the car which later collided with his wagon when he was about forty feet from the north or nearest car track, at which time the car in question had just passed over Twelfth avenue and was, as he said, proceeding slowly down the hill. After seeing the car descending slowly, he looked in the opposite direction for approaching vehicles and saw none coming from the west. He looked at the car again just before his team reached the track and saw the car approaching, two hundred feet or more distant, and running about six miles an hour. It appeared to him that there was plenty of time to cross the tracks before the car came. He again looked down the track to see if anything was coming from the other way, and drove on the track. When his front wheels were on the track, he looked back at the car the third time. The car was then coming very fast, and he urged his team by shouting at them and hitting them hard with the lines. He continued to hit the team with his lines and to urge them until the car struck the felloe of the hind wheel, the extreme rear part of his wagon. Another inch and a half would have cleared the wagon altogether. The car passed the wagon from one and one-half to two car lengths, after tipping it over, before it could be stopped.

Respondent was a healthy man before receiving the injuries, earning at the time $68 per month as a teamster, and

had previously earned from $110 to $133 a month as a locomotive fireman, which had been his occupation. Respondent had one kidney crushed, his spine in the lumbar region wrenched and sprained, and the tendons torn, and suffered a severe shock to his nervous system. The ureter from the crushed kidney has ever since the time of the injuries become clogged by pus and accumulations, causing the urine to accumulate in large quantities, producing high fevers and intense pain until the accumulation of urine causes pressure sufficient to force passage to the bladder. Respondent's spine has never recovered, and he is unable to walk without the assistance of a cane, or to do any manual labor whatever. His sleep is much disturbed, and there has been no perceptible improvement in his condition for months.

The principal allegations of respondent's amended complaint were denied in the answer of appellants, and there was an affirmative defense of contributory negligence on the part of respondent, which was denied by respondent. A motion for nonsuit was made by appellants at the conclusion of respondent's case in chief, which was denied by the court with permission to renew the same at the conclusion of all the evidence. The appellants introduced testimony in chief and, on the conclusion of all the evidence, renewed their motion for a nonsuit, which was denied. The jury returned a verdict in favor of respondent for $5,000. There was a motion made for judgment *non obstante veredicto*, on the ground that the verdict was contrary to the law and the evidence, and that the evidence conclusively showed that plaintiff was guilty of contributory negligence which was the proximate cause of his injury; and in the event of the motion *non obstante veredicto* being denied, a motion for a new trial on all of the statutory grounds. These motions were denied by the court.

I. It is first urged by appellants that the motion for a nonsuit and for judgment *non obstante veredicto* should have been granted by the court for the reason that, as appellants

contend, the respondent's case conclusively showed that he was guilty of contributory negligence. In support thereof it is argued that, the respondent having seen the car when it was about two blocks away, at which time he was about forty feet from the tracks and moving at about four miles an hour, the car at that time was traveling slowly and at about the same speed as himself, that as his horses were about to step upon the track he looked a second time and found the car about two hundred feet away, traveling towards him at the rate of ten miles an hour, and that he looked a third time after he was upon the track and found the car almost upon him and traveling at the rate of twenty-five to thirty miles an hour, it is shown conclusively that respondent was guilty of contributory negligence in attempting to pass ahead of the car. Appellants ask this question: "On seeing this car approaching two blocks away, what presumption had the respondent a right to indulge in?" and cite the case of *Beeman v. Puget Sound Traction, L. & P. Co.*, 79 Wash. 137, 139 Pac. 1087, with regard to these presumptions. In that case, a pedestrian was about to step from the sidewalk when he saw a car approaching at approximately thirty miles an hour. Without paying further attention to the car thereafter, he stepped upon the track and was struck by it. The court say:

"While no absolute duty to stop, look, and listen rests upon one who is about to cross a street car track . . . we do not understand that this or any other court has ever held that one, knowing a street car to be approaching, can shut his eyes to the fact and step heedlessly in front of it under the mental assumption that the car will not overtake him."

In the case in hand, the respondent, according to his testimony, did not drive upon the track heedlessly, but looked twice before doing so. He looked the third time while crossing, and did everything possible to get his wagon across as soon as he observed that there was danger. There is testimony that the car increased its speed after he drove on the

track. It would appear that the motorman did nothing to avoid a collision until half a car's length from the wagon, and then made only a partial application of air to the brakes. A number of decisions from our own court are cited by appellants, to the effect that the plaintiff was held guilty of contributory negligence where, after having seen, or being able to see if he had looked, an approaching car, he proceeded oblivious of the car's presence, miscalculated the distance of the car or its speed, and thus failed to exercise due caution for his safety. *Helber v. Spokane St. R. Co.*, 22 Wash. 319, 61 Pac. 40, and several later cases. None of these cases apply, however, it seems to us, for the reason that, according to the showing made by respondent in this case, he did not proceed as if oblivious of the car's presence, but directly to the contrary. It would appear that the motorman of the car saw the team when it came in view. When the car was three hundred feet up the street, he first saw respondent's wagon and team, and he had an unobstructed view to the time he struck the wagon. There is some conflict between the witnesses even for the respondent as to the speed at which the car was going just before it struck respondent's wagon. It is admitted that the ordinance of the city of Seattle limited the speed of the car to twelve miles an hour in that portion of the city. There was testimony that the car was running, just before it struck the wagon, at a rate of from eighteen to thirty miles an hour. In the case of *Richmond v. Tacoma R. & Power Co.*, 67 Wash. 444, 122 Pac. 351, there is an exhaustive and enlightening discussion, per Parker, Judge, of the question of when the contributory negligence of the plaintiff should be considered conclusive as a matter of law and when it should be submitted to the jury as a question of fact. As was said by the writer of the opinion in that case:

"It would indeed be a remarkable case that would call for a directed verdict against a defendant upon the ground that his negligence had been so conclusively proven as to enable

the court to so decide as a matter of law; and yet there seems to be no more reason for expecting such disposition of personal injury cases occasionally against a defendant, than to expect directed verdicts against a plaintiff by reason of his contributory negligence. Both involve an affirmative showing of negligence against an equally strong presumption to the contrary. These observations suggest the exercise of great caution in deciding, as a matter of law, that a defendant [plaintiff] is guilty of contributory negligence."

It was further pointed out in that case, which was one of injury to a pedestrian, that,

"A pedestrian is justified in ordering his movements upon the assumption that street cars will be operated, not only in conformity with local laws, but with a high degree of care and with due regard to public travel upon the street. · *Chisholm v. Seattle Elec. Co.*, 27 Wash. 237, 67 Pac. 601; *Mallett v. Seattle, Renton & Southern R. Co.*, 66 Wash. 251, 119 Pac. 743. Respondent being entitled to act upon this assumption, it cannot be decided, as a matter of law, that he was guilty of contributory negligence in hurriedly proceeding upon his way across the track, when it was the duty of appellants, in any event, to keep the speed of the car within the limit of twenty miles per hour [in this case, twelve miles per hour]."

The above case we consider ample authority for the trial court and this court to resolve the question of contributory negligence as a question of fact for the jury, and that the motion for a nonsuit and the motion for judgment *non obstante veredicto* were both properly denied. See, also, *Merwin v. Northern Pac. R. Co.*, 68 Wash. 617, 123 Pac. 1019; *Franey v. Seattle Taxicab Co.*, 80 Wash. 396, 141 Pac. 890.

II. Appellants complain of an instruction given by the court on the doctrine of last clear chance, upon the ground that it did not contain a correct statement of the rule of last clear chance, and upon the further ground that the doctrine of last clear chance had no application to the facts of this case, and that the instruction is contrary to the law and the evidence. It is contended in support thereof that the

facts of the case at bar are closely analogous to the case of *Johnson v. Washington Water Power Co.*, 73 Wash. 616, 132 Pac. 392, where it was held that the doctrine of last clear chance had no application to a situation such as was disclosed by the testimony in the case. The facts in the *Johnson* case cited were that the plaintiff, after seeing a car a block away, did not look again for the car, but turned his horses onto the track when the car was quite near him, too close in fact to permit him to swing his horses clear of the track before the car was on him. The facts were similar to the pedestrian case of *Beeman v. Puget Sound Traction, L. & P. Co.*, 79 Wash. 137, 139 Pac. 1087. In the case at bar, however, the respondent did look before his team stepped onto the track, at which time the car was nearly a block away, and it was the extreme hindmost portion of respondent's wagon in this case which the car struck, instead of the horses in front of it, as in the *Johnson* case. It would appear, therefore, that if the motorman had made the slightest effort at almost any instant of time previous to the effort that he did make, when the car was within a half car length of respondent's wagon, he would have missed colliding with respondent's wagon. It was then too late to avoid striking the wagon, although a margin of not to exceed one and one-half inches would have avoided the collision. We see no fault in the giving of the instruction on last clear chance, therefore, and we see no fault in the instruction itself. The instruction given, with modifications as to details to fit the case in hand, was in substance exactly the same as the instructions upon last clear chance given by the trial court in *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941. The instructions in that case were approved, and this court said:

"The courts are wide of an agreement as to the extent of the last chance doctrine as applied to the operation of trains, street cars, automobiles and the like. But what we conceive to be the sounder view is this: Assuming that a traveler has negligently placed himself in a dangerous situation upon the

6—87 WASH.

highway, then, as we have seen, whenever the person in control of such agency actually sees the traveler's situation and should appreciate his danger, the last chance rule applies, without regard to the continuing negligence of the traveler concurring with that of the operator up to the very instant of the injury. A second situation to which the rule applies is this: where the person in control of such agency, by keeping a reasonably careful lookout commensurate with the dangerous character of the agency and the nature of the locality, could have discovered and appreciated the traveler's perilous situation in time, by the exercise of reasonable care, to avoid injuring him, and injury results from the failure to keep such lookout and to exercise such care, then the last chance rule applies, regardless of the traveler's prior negligence, whenever that negligence has terminated or culminated in a situation of peril from which the exercise of ordinary care on his part would not thereafter extricate him."

These observations by this court were added and applied in the instructions on last clear chance by the trial court in the case at bar.

III. Appellants complain of the following instruction:

"Under the city ordinance of this city, the speed of street cars in the thickly settled portions of the city is limited to twelve miles an hour, and I instruct you that the operation of a street car in excess of that speed at the point in controversy in this case, if you find that the street car was operated at a speed in excess of that, was, of itself, negligence."

The appellants say that this instruction is a comment upon the facts in the case, in that it assumes that the place where the accident happened is a thickly settled portion of the city, and further, that the instruction is misleading and an incorrect statement of the law, because it is not qualified by the further statement that the negligence presumed by the violation of a city ordinance would not make the defendants liable unless such a negligence was the proximate cause of the damage and injuries sustained. As to its being an assumption on the part of the court that the place where the accident happened was a thickly settled portion of the city

and therefore a location where the speed ordinance of the
city applied, it was admitted at the trial, by one of counsel
for appellants, that the place where the accident happened
was a place at which the city ordinance limited the speed of
the car to twelve miles an hour, inferentially therefore ad-
mitting that the place was a business or settled residential
portion of the city.   Other instructions given by the court
told the jury that respondent could not recover unless neg-
ligence of appellants was the proximate cause of the col-
lision.   The identical form of this instruction was approved
by this court in the case of *Engelker v. Seattle Elec. Co.*,
50 Wash. 196, 96 Pac. 1039.

IV.   There are errors assigned by appellants upon the
refusal of the court to give instructions requested by them
harmonizing with their theory of the law of the case upon
the doctrines of last clear chance, negligence in excessive and
unlawful speed, and the proximate cause of the injury, all
of which were covered by fair and proper instructions given
by the court.

V.   Appellants requested the court to instruct the jury
as follows:   .

"I instruct you that if you find for the plaintiff, in assess-
ing damages to the plaintiff you will allow such a sum as
will compensate him for the injury he has sustained.   You
will not allow him anything as punitive or exemplary dam-
ages, or by reason of any sympathy you may feel for the said
plaintiff, his family, or financial circumstances."

They complain that this instruction should have been
given, and that the refusal thereof was error, as a caution
to the jury against giving anything as punitive or exemplary
damages or by reason of sympathy for the respondent or
his family or his financial circumstances, and that the in-
struction was not given in substance or form.   The court did,
however, give fair and correct instructions as to what they
should allow the respondent and how they should base the
damages, if any, which they allowed him, and the giving of

this instruction would be to a certain extent surplusage. It was a proper instruction to give had the court desired, but its refusal is not error, for we will not assume that the jury disobeyed the other directions of the court that, if they found for the respondent, they would allow only such sum as would compensate him for the injury he had sustained.

VI. An error is assigned because, during the cross-examination, counsel for appellants asked respondent the following question: "Do you know anything about the distance within which one of the cars can be stopped?" The question was objected to by counsel for respondent on the ground that it was not proper cross-examination, and the objection was sustained by the court. It is argued that this ruling was erroneous for the reason that, had the respondent known of the distance within which one of these street cars could have been stopped, and had ventured onto the tracks when the car was within a distance in which he knew or thought a car could not be stopped, his contributory negligence would have been at once established. They urge that it was certainly proper cross-examination upon the statement of respondent on direct examination that there was plenty of time to clear the tracks before the car reached him. The exclusion was not error. Under the situation as respondent viewed it, when he started upon the track with the car 200 feet away, at the rate of speed it was then traveling, there was plenty of time to clear the track *before the car reached him.* The distance required to stop it, whether great or small, was not an element to be considered.

VII. Appellants complain of an instruction given by the court in measuring damages which respondent might recover if recovery were allowed, to the effect that such damages, if proven, should include "the amount he has expended, and in the future will be required necessarily to expend, for services of a physician and for medicine and medical attendance, if you find that any such expenditures have been made, or will, in the future, be made, by reason of any injuries," etc.

*Torgeson v. Hanford,* 79 Wash. 56, 139 Pac. 648, is cited, and it is urged that the respondent is entitled to recover a reasonable charge for physician's services, and that it would be error to submit the question to the jury except on the basis that the amount allowable would be the reasonable value of the services. Appellants admit, however, that in the case at bar the testimony was that a reasonable charge for the services performed would be $150, but that this did not relieve the court from the necessity of instructing that only a reasonable charge could be recovered, and that what constituted a reasonable charge was a matter for the jury to determine notwithstanding the testimony. We do not understand the rule to be that a jury can determine anything "notwithstanding the testimony." We consider it to be an incontrovertible principle that the jury must determine the case from the testimony. There being no other evidence in the case except that a reasonable charge for the services already performed would be $150, it was not necessary for the court to be more particular in instructing than it was in the instruction complained of. *Niemyer v. Washington Water Power Co.,* 45 Wash. 170, 88 Pac. 103; *Cole v. Seattle, Renton & Southern R. Co.,* 42 Wash. 462, 85 Pac. 3; *Webster v. Seattle, Renton & Southern R. Co.,* 42 Wash. 364, 85 Pac. 2; *Eggleston v. Seattle,* 33 Wash. 671, 74 Pac. 806; *Anderson v. Hurley-Mason Co.,* 67 Wash. 342, 121 Pac. 815, Ann. Cas. 1913 D. 148; *Helland v. Bridenstine,* 55 Wash. 470, 104 Pac. 626.

VIII. Appellants complain that the award of the jury was excessive and unwarranted by the evidence. Where the nature and permanency of the injuries were as shown by respondent and his witnesses, with his earning capacity before and since the injury, we are not prepared to say that $5,000 was an excessive recovery therefor. It was a question of fact for the jury, and we cannot say that it appears so excessive as to show the influence of passion or prejudice. *Hammons v. Setzer,* 72 Wash. 550, 130 Pac. 1141.

IX. Appellants urge improper conduct of counsel as a ground for a new trial. It is shown that counsel for respondent used the following language, in substance, several times during his argument to the jury: "Defendants had this plaintiff examined by their own physician two different times. Why is that physician not here to testify as to his condition? I will tell you why. It is because these defendants admit the condition of the plaintiff to be as he has testified here." They also complain of another statement made by counsel for respondent in arguing the case to the jury, as follows: "This defendant, Mr. Parkin, who testified that he worked for Rockefeller and the big interests." It is admitted by counsel for appellants that to these remarks of counsel during the argument, counsel for appellants made no reply at the time, and no objection or exception was then made or taken thereto. They made no application to the court at the time to instruct the jury to disregard said remarks of counsel for respondent, and no such instruction was given by the court. The case of *Cranford v. O'Shea*, 75 Wash. 33, 134 Pac. 486, is cited, to the effect that no exceptions, objections, and requests to caution were necessary at the time the remarks were delivered. The case cited does not so decide. It was there held that the trial court felt and considered that remarks and statements made in argument by counsel were exceedingly prejudicial, and that, if he had discretion to grant a new trial on the ground of said prejudicial argument, he would do so, but that he felt he had no such discretion, and therefore denied it. This court, per Ellis, Judge, held:

"Had the trial court *exercised his discretion*, passed upon the merits of the motion, and either granted or refused a new trial in accordance with his views of the merits, we could not, under the circumstances of this case, have disturbed his ruling. We could not have said, as a matter of law, in either case, that he had abused his discretion, in the absence of a timely exception to the objectionable argument and the request for an instruction that it be disregarded. . . . The discretion is vested in the trial court, not in this court."

And in this case, in the absence of timely exception to the objectionable argument and request for an instruction that it be disregarded, the trial judge having exercised his discretion, we will not interfere. *State v. Bailey*, 31 Wash. 89, 71 Pac. 715; *State v. Regan*, 8 Wash. 506, 36 Pac. 472; *State v. Van Waters*, 36 Wash. 358, 78 Pac. 897; *Keough v. Seattle Elec. Co.*, 71 Wash. 466, 128 Pac. 1068; *State v. Smails*, 63 Wash. 172, 115 Pac. 82; *Taylor v. Modern Woodmen of America*, 42 Wash. 304, 84 Pac. 867.

We can see no prejudicial error in the record of the trial before us. The judgment is therefore affirmed.

MORRIS, C. J., MOUNT, CHADWICK, and MAIN, JJ., concur.